UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CARLA C. SANDERS *ex rel.* M.T., Jr.,

         Plaintiff,    Case # 17-CV-799-FPG

v.              DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

## INTRODUCTION

Carla C. Sanders ("Plaintiff") brings this action on behalf of her minor son ("M.T.") pursuant to Title XVI of the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied his application for Supplemental Security Income ("SSI"). ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c). ECF Nos. 12, 18. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner solely for calculation and payment of benefits.

## BACKGROUND

On July 17, 2013, Plaintiff applied for SSI with the Social Security Administration ("the SSA") on M.T.'s behalf. Tr.[1] 145-50. She alleged that M.T. had been disabled since September 1, 2004, due to a learning disability. Tr. 174. On July 11, 2016, Plaintiff and M.T. appeared and testified at a hearing before Administrative Law Judge Joan H. Deans ("the ALJ"). Tr. 28-68. On

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

1

August 24, 2016, the ALJ issued a decision finding that M.T. was not disabled within the meaning of the Act. Tr. 12-23. On June 16, 2017, the Appeals Council denied M.T.'s request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Child Disability Standard

An individual under 18 years old will be considered disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner must follow a three-step process to evaluate child disability claims. *See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* § 416.924(b). If so, the child is not disabled. If not, the ALJ proceeds to step two and determines whether the child has an impairment or combination of impairments that is "severe," meaning that it causes "more than minimal functional limitations." *Id.* § 416.924(c). If the child does not have a severe impairment or combination of impairments, he or she is not disabled. If the child does, the ALJ continues to step three.

At step three, the ALJ examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.924(d). If so, the child is disabled.

To determine whether an impairment or combination of impairments functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. *Id.* §§ 416.926a(b)(1)(i)-(vi).

To functionally equal the listings, the child's impairment(s) must cause "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a marked limitation when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an extreme limitation when his or her impairment(s) "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed M.T.'s claim for benefits under the process described above. At step one, the ALJ found that M.T. had not engaged in substantial gainful activity since the application date. Tr. 15. At step two, the ALJ found that M.T. has a learning disorder, which constitutes a severe impairment. *Id.* At step three, the ALJ found that this impairment does not meet or medically equal a Listings impairment. *Id.*

Next, the ALJ found that M.T.'s impairment does not functionally equal a Listings impairment. Tr. 15-23. Specifically, as to the six domains of functioning, the ALJ found that M.T. has marked limitation in Interacting and Relating with Others; less than marked limitation in Acquiring and Using Information and Attending and Completing Tasks; and no limitation in Moving About and Manipulating Objects, Caring for Yourself, and Health and Physical Well-Being. Tr. 18-23. Accordingly, the ALJ found that M.T. was not disabled within the meaning of the Act. Tr. 23.

### II. Analysis

M.T. argues that the Commissioner's decision should be reversed because the ALJ erred in finding that he suffered a less than marked limitation in the Attending and Completing Tasks domain.[2] ECF No. 12-1 at 13-14; ECF No. 19 at 4-5. M.T. asserts that he has a marked limitation in this domain and that the ALJ's conclusion to the contrary lacks substantial evidence. *Id.* The Court agrees.

---

[2] M.T. also argues that the ALJ's finding in the Acquiring and Using Information domain lacks substantial evidence. ECF No. 12-1 at 10-13; ECF No. 19 at 2-4. The Court will not reach that argument because it remands this case based on the ALJ's errors in the Attending and Completing Tasks domain.

1. **Attending and Completing Tasks Domain**

In the Attending and Completing Tasks domain, the ALJ considers how well the child can focus and maintain attention and how well he begins, carries through, and finishes activities, including the pace at which he performs activities and the ease with which he changes activities. 20 C.F.R. § 416.926a(h) (effective June 12, 2015 to Oct. 6, 2016). The ALJ also assesses the child's ability to change focus after completing a task, avoid impulsive thinking and acting, organize, plan ahead, prioritize competing tasks, and manage his time. S.S.R. 09-4p, 2009 WL 396033, at *2 (S.S.A. Feb. 18, 2009).

An adolescent like M.T. (a child between the ages of 12 and 18) should be able to pay attention to increasingly longer presentations and discussions, maintain concentration while reading textbooks, and independently plan and complete long-range academic projects. 20 C.F.R. § 416.926a(h)(2)(v). He should also be able to organize his materials and plan his time to complete school tasks and assignments. *Id.* In anticipation of entering the workplace, the child should be able to maintain attention on a task for extended periods of time and not be unduly distracted by peers or unduly distract them in a school or work setting. *Id.*

Examples of limitations in this domain include being easily startled, distracted, or overreactive to sounds, sights, movements, or touch; being slow to focus on or failing to complete activities of interest like games or art projects; repeatedly becoming sidetracked from activities or frequently interrupting others; being easily frustrated and giving up on tasks, including ones the child is capable of completing; and requiring extra supervision to stay engaged in an activity.[3] *Id.* § 416.926a(h)(3)(i)-(v). Limitations in this domain "are most often seen in children with mental disorders." S.S.R. 09-4p, 2009 WL 396033, at *2.

---

[3] These examples may differ from the child's actual limitations in this domain and do not necessarily describe a marked or extreme limitation. 20 C.F.R. § 416.926a(h)(3).

5

## 2. Evidence Relevant to the Attending and Completing Tasks Domain

In M.T.'s benefits application, Plaintiff reported that M.T. has a limited ability to pay attention and stick with a task. Tr. 162. She indicated that, although M.T. can work on arts and crafts projects, he cannot keep busy on his own, finish things he starts, complete homework, or complete chores most of the time. *Id.* Plaintiff commented that M.T. "often needs adult assistance to complete tasks and stay on task." *Id.* Plaintiff testified that although M.T. may get "so focused" on a game,[4] she has to "constantly" remind him to properly care for his hygiene after using the bathroom and to complete chores or tasks.[5] Tr. 56-57, 60, 63. She also testified that M.T. often gets in trouble for acting out and distracting other students in class, and that she believes he does this to draw attention away from the fact that he does not know how to do his schoolwork. Tr. 63.

M.T.'s Individualized Education Program ("IEP")[6] documents several examples of limitations in the Attending and Completing Tasks domain. Tr. 268-69. It notes that M.T.'s writing ability is impaired in part because he "struggles to remain on one single topic and does not follow guidelines." Tr. 268. The IEP also states that M.T. distracts other students as the "class clown," which "negatively impacts his grades as well as his peers' grades." Tr. 269-70; *see also* Tr. 208-10, 213-15, 218, 256-60 (several disciplinary records indicating that M.T. was disruptive in class).

---

[4] S.S.R. 09-4p notes that "[s]ome children with impairments can attend to some tasks, but not to all tasks in all settings. Such children may exhibit 'hyperfocus,' an intense focus on things that interest them, such as video games, but be limited in their ability to focus on other tasks." S.S.R. 09-4p, 2009 WL 396033, at *3.

[5] Although the ALJ's decision included boilerplate language indicating that she found "the statements concerning the intensity, persistence, and limiting effects of [M.T.'s] symptoms . . . not entirely consistent with the medical evidence and other evidence in the record," she did not specifically discount any of Plaintiff's statements. Tr. 16.

[6] An IEP is a document created for every child who receives special education services. It details the child's present levels of educational performance, sets forth measurable goals, and describes the services the school will provide. *See* Jan Baumel, M.S., What is an IEP?, *available at* https://www.greatschools.org/gk/articles/what-is-an-iep/ (dated Dec. 19, 2016) (last visited Dec. 7, 2018).

The IEP indicates that M.T. requires "[v]erbal prompting for refocusing and redirection" when he "is distracted and off-task in class." Tr. 269. It further provides that he requires "[f]requent checks for understanding, special seating near the teacher and away from distractions, and refocusing/redirection prompts" to "remain[] on task and ensur[e] he understands the material." *Id.*; *see also* Tr. 270, 273 (indicating that M.T. requires these services daily in all of his classes). The IEP states that M.T. must improve his "concentration/focus strategies" to successfully transition from school to post-school activities. Tr. 271. It also sets forth numerous testing accommodations, including that M.T. take his tests in a location that "minimizes distractions to support his ability to maintain focus and concentration." Tr. 275.

M.T.'s special education teacher Nicole Failing indicated that he has problems in the Attending and Completing Tasks domain. Tr. 233. She generally rated M.T. as having a "serious" or "very serious" problem in all relevant activities and indicated that these issues occur daily or hourly. *Id.* Ms. Failing commented that M.T. is "a tough student to keep on task." *Id.* Because he does "not enjoy doing his work in the content areas," he "become[s] the distraction in the room." *Id.* Ms. Failing indicated that, even with two teachers in the classroom, it is a "struggle" to keep M.T. on task. *Id.* The ALJ afforded "moderate weight" to Ms. Failing's assessment, which also rated M.T.'s ability in the other functional domains. Tr. 17.

Consultative examiner Kavita Subrahmanian, Ph.D., performed a child intelligence evaluation of M.T. and opined, among other things, that he can attend, follow, and understand age-appropriate directions, but that he has marked limitation in his ability to complete age-appropriate tasks. Tr. 329. The ALJ gave Dr. Subrahmanian's opinion only "little weight." Tr. 17.

Non-examining state agency pediatrician J. Meyer opined that M.T. has less than marked limitations in the Attending and Completing Tasks domain. Tr. 73. To support this finding, Dr.

7

Meyer noted that M.T. "is easily distracted per his IEP" and that he "has not been diagnosed with or treated for ADHD." Tr. 74. The ALJ gave this opinion "significant weight." Tr. 17.

### 3. The ALJ's Findings in the Attending and Completing Tasks Domain

Despite all of the evidence outlined above, the ALJ concluded that M.T. has a less than marked limitation in the Attending and Completing Tasks domain. Tr. 19. The entirety of her analysis is as follows:

> [M.T.] is not seeing any doctor [or] taking any medication for his impairment so it is difficult to quantify . . . . He has not been diagnosed with or treated for ADHD. [His] limitations in attending and completing tasks . . . are well documented in his IEPs. [The] IEP allows him to have close proximity to an adult teacher to help him focus and checks for understanding new material. However, [M.T.] testified that he is able to do homework. His grades tend to be around the 70s. The [ALJ] finds [M.T.] has less than marked limitations in this domain.

Tr. 19-20 (internal record citations omitted).

The Court finds that the ALJ's conclusion in this domain, which was limited to a single paragraph, is not supported by substantial evidence. First, the ALJ faults M.T. for not seeing a doctor or taking medication. Tr. 19. This does not lend support to the ALJ's ultimate conclusion, because it is unclear what type of doctor or medication treats a learning disorder, and M.T. receives a great deal of supporting services through special education and his IEP. Second, the ALJ notes that M.T. has not been diagnosed with or treated for ADHD, but the lack of an ADHD diagnosis does not demonstrate less than marked limitation in this domain. *See* S.S.R. 09-4p, 2009 WL 396033, at *3 n.12 (noting that the SSA provides many examples in this domain involving children with ADHD, but that "many other kinds of mental disorders can cause limitations in the ability to attend and to complete tasks").

Next, the ALJ indicates that M.T.'s limitations in this domain are "well documented in his IEP," which allows him to have close proximity to a teacher to help him focus and check his

understanding. Tr. 19-20. This statement, however, seems to support greater limitation in this domain—the regulations provide that a child who requires extra supervision to stay engaged in an activity has decreased functioning in this domain. *See* 20 C.F.R. § 416.926a(h)(3)(v). This statement also ignores the fact that "[t]he need for frequent prompting demonstrates that the child is not paying attention as appropriately, effectively, or independently as children of the same age who do not have impairments. Despite the fact that the child is paying attention with prompting, this child is not functioning well in this domain." S.S.R. 09-4p, 2009 WL 396033, at *2. It is also unclear whether the ALJ considered M.T.'s "need for a structured setting and the degree of limitation in functioning [he] ha[s] or would have outside the structured setting." 20 C.F.R. § 416.924a(b)(5)(iv)(C) (effective until Mar. 26, 2017). A structured or supportive setting, like M.T.'s special education classroom that accommodates his impairment, "may minimize the signs and symptoms" of his impairment. *Id.* § 416.924a(b)(5)(iv)(B)-(C).

Finally, the ALJ notes that M.T. can do his homework and that he gets grades in the 70s, but she in no way ties this evidence to her conclusion that M.T. has less than marked limitation in the Attending and Completing Tasks domain. Tr. 19-20.

In another portion of her decision, the ALJ affords "significant weight" to the assessment of Dr. Meyer who opined, among other things, that M.T. has less than marked limitation in the Attending and Completing Tasks domain. Tr. 17, 73-74. But Dr. Meyer's non-examining opinion does not constitute substantial evidence to support the ALJ's conclusion in this domain. "District courts in this Circuit have stated, as a general proposition, that while reports from nonexamining consultants are entitled to some evidentiary weight, they cannot constitute substantial evidence." *Sundown v. Colvin*, No. 1:15-CV-00814(MAT), 2018 WL 1081014, at *3 (W.D.N.Y. Feb. 28, 2018) (quotation mark and citations omitted); *see also D'augustino v. Colvin*, No. 15-CV-6083,

9

2016 WL 5081321, at *2 (W.D.N.Y. Sept. 16, 2016) ("[E]ven where a nonexamining opinion is afforded weight, *it alone* cannot be considered substantial evidence.") (citations omitted) (emphasis added).

Accordingly, for all the reasons stated, the Court finds that the ALJ's conclusion in the Attending and Completing Tasks domain is not supported by substantial evidence.

### 4. Remand for Calculation and Payment of Benefits

To functionally equal the listings and therefore establish disability, the child's impairment must cause marked limitations in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a). M.T. argues that this matter should be remanded solely for the calculation and payment of benefits because the evidence establishes that he has marked limitations in two domains of functioning—Attending and Completing Tasks and Interacting and Relating with Others[7]—and thus is disabled pursuant to the Commissioner's regulations. ECF No. 12-1 at 14-15; ECF No. 19 at 4-5. The Court agrees.

District courts are authorized to affirm, reverse, or modify the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand for calculation of benefits is appropriate only in cases where the record "provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) (citation omitted); *see also Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004).

Courts are directed to avoid "contribut[ing] any further to the delay of the determination of [a claimant's] application by remanding for further administrative proceedings" when such an instruction would prove unnecessary. *Diaz ex rel. E.G. v. Comm'r of Soc. Sec.*, No. 06-CV-530-

---

[7] As noted previously, the ALJ found that M.T. had a marked limitation in the Interacting and Relating with Others domain. Tr. 20-21. The parties do not dispute this finding.

JTC, 2008 WL 821978, at *8 (W.D.N.Y. Mar. 26, 2008). Moreover, "[d]elay is harmful for any litigant, but particularly in connection with benefits for children, which are not to replace lost income, but to enable low-income families to afford special education, medical treatment, physical rehabilitation, early intervention services, and personal needs assistance for the child." *Brown ex rel. J.B. v. Colvin*, No. 1:12-CV-1062 MAT, 2015 WL 1647094, at *9 (W.D.N.Y. Apr. 14, 2015) (quotation mark and citation omitted).

Here, the Court concludes that remanding to the Commissioner for further proceedings "would serve no productive purpose, would not produce findings contrary to this Court's conclusions, and would only cause further delay." *Id.* (citation omitted). Based on the extensive evidence outlined above, it would be futile to remand this case for further consideration. The record makes clear that M.T. suffers a marked limitation in at least two domains—Attending and Completing Tasks and Interacting and Relating with Others—and is therefore disabled pursuant to the Commissioner's regulations. Moreover, the Court is mindful that nearly five and a half years have passed since Plaintiff applied for SSI benefits on M.T.'s behalf. *See, e.g.*, *Myers ex rel. C.N. v. Astrue*, No. 09-CV-1429 (VEB), 2012 WL 4107453, at *11 (N.D.N.Y. Sept. 18, 2012) (holding that a delay over two years permitted remand for calculation of benefits and noting that "the purpose of providing SSI benefits to children is to assist them *while they are children*") (alterations and citation omitted) (emphasis added); *Dabul-Montini ex rel. N.D. v. Astrue*, No. 09-CV-966 (TJM/VEB), 2010 WL 3584348, at *11 (N.D.N.Y. July 30, 2010), *report and recommendation adopted*, 2010 WL 3584289 (Sept. 7, 2010) (holding that a near five-year delay in a child's case warranted remand for calculation of benefits).

Accordingly, the Court remands this matter solely for the calculation and payment of benefits.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 18) is DENIED, and this matter is REMANDED to the Commissioner solely for calculation and payment of benefits. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: December 7, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court